**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ZORAIDA GONZALEZ-MORALES,**<br><br>    Plaintiff,<br><br>       v.<br><br>**PRESBYTERIAN COMMUNITY HOSPITAL, INC., ET AL.,**<br><br>    Defendants. | CIV. NO. 13-1906 (PG) |

### OPINION AND ORDER

Pending before the court is co-defendant Presbyterian Community Hospital, Inc.'s motion to dismiss (Docket No. 66). For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the co-defendant's motion.

### I. BACKGROUND

On December 11, 2013, plaintiff Zoraida Gonzalez Morales (hereinafter referred to as "Plaintiff" or "Gonzalez") filed the above-captioned claim against defendants Presbyterian Community Hospital, Inc. ("PCH" or "the Hospital"); Dr. Raul Vale-Flores, his wife and the conjugal partnership constituted between them; Dr. Lope M. Gómez-Homrazabal, his wife and the conjugal partnership constituted between them; Dr. Jose Dueño-Quiñones, his wife and the conjugal partnership constituted between them and Dr. Rosangel Santiago-Perez, his wife and the conjugal partnership constituted between them for the failure to screen, treat and stabilize Plaintiff in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. The complaint includes a supplemental cause of action for medical malpractice pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141 ("Article 1802").

On February 10, 2014, Gonzalez filed an amended complaint, see Docket No. 3, and on July 7, 2014, PCH filed a third party complaint against Global Emergency Services, Inc., a company hired to provide services for PCH's Emergency Department, and its unknown insurance company. see Docket No. 35.

Plaintiff alleges that on December 15, 2011, she was taken to the Hospital's emergency room presenting symptoms of swelling and redness of the left arm, a recent insect bite to the left hand, and severe right hip pain. See Docket No. 3, ¶¶ 3.1-3.2. Plaintiff's vital signs were taken, such as her

temperature, blood pressure, heart rate and respiratory rate, and laboratory blood tests were performed. Id. at ¶¶ 3.3-3.5. Co-defendant Dr. Gomez-Hornazabal prescribed intravenous antibiotics and pain medication, and she was eventually discharged in the early hours of December 16th, 2011 and prescribed oral antibiotics and pain medication. Id. at ¶¶ 3.6-3.7. Gonzalez claims that although the pain in her left arm had subsided, she had continued to complain of right hip pain and difficulty walking prior to being discharged. Id. at ¶ 3.9. Therefore, Gonzalez alleges that the hospital did not perform the appropriate medical screening nor provided the essential stabilizing treatment for her condition. Id. at ¶ 3.10.

A day later, on December 17, 2011, the Plaintiff claims she returned to the Hospital with symptoms of severe right hip pain, epigastric pain and diarrhea. Her vital signs were taken and co-defendant Dr. Rosangel Santiago-Perez ordered laboratories and x-rays. Id. at ¶¶ 3.11-3.12. After Dr. Santiago's shift ended, Dr. Jose Dueño-Quiñones remained in charge of her treatment. Despite complaining of right hip pain, he eventually discharged her without admitting her. Id. at ¶ 3.14.

On December 19th, 2011, Gonzalez was transported via ambulance to the University of Puerto Rico Medical Center in Carolina, Puerto Rico, where she was evaluated for right hip pain and referred to a physiatrist after being evaluated by the medical personnel of said institution. Id. at ¶¶ 3.17-3.18.

Three days later, on December 22, 2011, the Plaintiff returned to PCH for a third time complaining of right hip pain. Dr. Raul Vale Flores evaluated her, diagnosed her with right hip bursitis and ordered Toradol 60mg. Id. at ¶¶ 3.19-3.20. Her vital signs during this visit showed a fever of 38.4C, a blood pressure of 140/69, a heart rate of 106 and a respiratory rate of 21. Despite this, Plaintiff claims she was once again discharged without being admitted. She thus contends that the Hospital and its providers failed to provide the adequate medical screening and stabilization for a patient with her condition. Id. at ¶ 3.22.

In January of 2012, Gonzalez eventually visited physiatrist Dr. Olga Bermudez as she continued to suffer pain in her right hip. Id. at ¶¶ 3.23-3.24. Further evaluations and tests showed a "destruction and widening of the right sacroiliac joint with imaging findings consistent with septic arthritis, or a bacterial infection in her right hip." Id. at ¶ 3.26. As a result of this condition, Gonzalez claims to have suffered destruction of her right hip bone, chronic pain and difficulty walking. Id. at ¶ 3.29.

CIV. NO. 13-1906 (PG)                                                        Page 3

It is the Plaintiff's contention that the absence of an adequate medical screening, coupled with her three premature discharges, prevented a timely identification of the critical medical condition she was suffering from. Id. at ¶¶ 3.23-3.24.

The Hospital now moves to dismiss the Plaintiff's EMTALA claims with prejudice and her state law medical malpractice claims without prejudice. See Docket No. 66. In light of the Plaintiff's failure to timely file a response, the court ruled that this motion shall be deemed unopposed. See Docket No. 68.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir.2013) (quoting FED.R.CIV.P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir.2014) (citing Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir.2014)) (internal quotation marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011)).

"To cross the plausibility threshold, the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare

recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 556 U.S. at 678). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'" Rodriguez-Vives v. Puerto Rico Firefighters Corps, 743 F.3d 278, 283 (1st Cir.2014) (citing Rodríguez–Reyes v. Molina–Rodríguez, 711 F.3d 49, 53 (1st Cir.2013)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664-664. Nevertheless, when evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). As a result, courts should read the complaint "as a whole" and be cautious not to apply the plausibility standard "too mechanically." See Rodriguez-Vives, 743 F.3d at 283 (citing Garcia–Catalan, 734 F.3d at 101, 103).

### III. DISCUSSION

**A. EMTALA Claims**

"Congress enacted EMTALA in 1996 in response to claims that hospital emergency rooms were refusing to treat patients with emergency conditions but no medical insurance. … EMTALA therefore 'is a limited anti-dumping statute, not a federal malpractice statute.'" Ramos-Cruz v. Centro Medico del Turabo 642 F.3d 17, 18 (1st Cir.2011) (citing Reynolds v. MaineGeneral Health, 218 F.3d 78, 83 (1st Cir.2000)). "To this end, EMTALA imposes duties on covered facilities to: (a) provide an 'appropriate medical screening examination' for those who come to an emergency room seeking treatment, and (b) provide, in certain situations, 'such further medical examination and such treatment as may be required to stabilize the medical condition.'" Alvarez–Torres v. Ryder Memorial Hosp., Inc., 582 F.3d 47, 51 (1st Cir.2009) (citing 42 U.S.C.

§ 1395dd(a), (b)(1)(A); López-Soto v. Hawayek, 175 F.3d 170, 172-73 (1st Cir.1999)). To establish an EMTALA violation, a plaintiff must show that:

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

Correa v. Hospital San Francisco, 69 F.3d 1184, 1190 (1st Cir.1995) (internal citations omitted).

In the case at hand, the Hospital does not contest that the Plaintiff properly alleged the first and second elements of an EMTALA cause of action. That is, the Plaintiff arrived at the emergency room of the Hospital, a participating EMTALA facility, seeking medical care for a medical condition. The issue thus turns on the remaining elements.

**1. Duty to Screen**

In the motion to dismiss, the Hospital argues that Gonzalez failed to properly set forth a plausible EMTALA claim for which relief could be granted. See Docket No. 66-1. According to the Hospital, the Plaintiff relies on conclusory statements and omits to allege any facts supporting a claim that her screening was "somehow different or less than similarly situated patients." Id. at page 12.

With regards to a participating hospital's medical screening requirement under EMTALA, subsection (a) of the statute establishes that:

> In the case of a hospital that has a hospital emergency department, if any individual … comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for **an appropriate medical screening** examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, **to determine whether or not an emergency medical condition … exists.**

42 U.S.C.A. § 1395dd(a). "EMTALA does not define the term 'appropriate medical screening examination.' However, it does indicate that the purpose of the screening is to identify an 'emergency medical condition.'" del Carmen Guadalupe v. Negron Agosto, 299 F.3d 15, 19 (1st Cir.2002). The statute defines the term "emergency medical condition" as:

CIV. NO. 13-1906 (PG) Page 6

>    (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--
>       (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
>       (ii) serious impairment to bodily functions, or
>       (iii) serious dysfunction of any bodily organ or part[.]

42 U.S.C. § 1395dd(e)(1)(A).

"For an EMTALA screening violation, a plaintiff need not prove that she actually suffered from an emergency medical condition when she first came through the portals of the defendant's facility … ." Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 717 F.3d 63, 69 (1st Cir. 2013) (internal quotation marks and citations omitted). "Moreover, whereas malpractice liability usually attaches when a health care provider fails to adhere to a 'general professional standard' of care, … , EMTALA only requires an appropriate medical screening examination within the capability of the hospital's emergency department." del Carmen Guadalupe, 299 F.3d at 21 (internal citation and quotation marks omitted). "A claim of inappropriate medical screening based on a failure to provide certain diagnostic tests must at least address whether the hospital was capable of performing such tests." Id. at 22.

In the complaint, the Plaintiff essentially alleges that the Hospital failed to provide her with the appropriate and necessary medical screening that was required under EMTALA in light of the critical medical condition she was in. See Docket No. 1. According to Gonzalez, the physical examination she received was inadequate for a patient presenting the set of symptoms and vital signs recorded during her three visits to PCH.[1] Id. To that effect, Plaintiff particularly alleges that the Hospital "failed to provide an adequate medical screening exam that was required of patients with substantially similar symptoms." Id. at ¶ 3.22.

When evaluating the plausibility of the Plaintiff's claims, it is uncertain at this point whether the tests and treatment that Gonzalez needed were in fact within the Hospital's capability, as it is neither alleged or

---

[1] The court notes that the Plaintiff unequivocally stated that her vital signs were taken every time she visited the Hospital, and that both blood laboratory tests and x-rays were ordered and performed. She was given antibiotics and pain medication on her December 16th visit. Six days later, on her third and last visit on December 22nd, she was prescribed Toradol. See Docket No. 1.

CIV. NO. 13-1906 (PG)                                                    Page 7

denied by PCH. Moreover, the Hospital failed to counter Plaintiff's allegation that the screening she was provided during her three visits was not uniform to the level of screening PCH provides other patients presenting similar complaints or symptoms. In fact, the Plaintiff alleges that she lacks the Hospital's relevant protocols, which are necessary for this determination. See Docket No. 3 at ¶ 3.33.

Because at this stage reasonable inferences are taken in favor of the pleader, the court hereby finds that the Plaintiff has sufficiently articulated a cause of action under EMTALA for failure to screen. Accordingly, the Hospital's request for dismissal of Plaintiff's EMTALA screening claim is **DENIED**.

### 2. Duty to Stabilize

The Hospital also requests the dismissal of Gonzalez's stabilization claim under EMTALA. It argues that the Plaintiff failed to allege that she was suffering from an emergency medical condition during any of her three visits or at the time of any of her discharges from PCH. See Docket No. 66-1 at page 12. PCH also contends that Plaintiff's EMTALA stabilization claim fails because she doesn't allege that the Hospital had knowledge that an emergency condition existed before discharging her. Id. at 17-18.

"As a corollary to the right to be appropriately screened, EMTALA guarantees patients the right, *if an emergency medical condition is determined to exist*, to have that condition stabilized before discharge or transfer to another hospital." Reynolds, 218 F.3d at 84 (emphasis ours). To that effect, the statute provides, in relevant part, that:

> If any individual … comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility … .

42 U.S.C. § 1395dd(b)(1). EMTALA defines the term "to stabilize" as "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur *during the transfer of the*

CIV. NO. 13-1906 (PG)                                                    Page 8

*individual from a facility … .*" 42 U.S.C. § 1395dd(e)(3)(A)(emphasis ours). "The term 'transfer' means the movement (**including the discharge**) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital … ." 42 U.S.C.A. § 1395dd(e)(4)(emphasis ours).

Per the language of the statute, "the duty to stabilize is only triggered when it has been determined that the patient is suffering from an emergency medical condition." Vazquez-Rivera v. Hosp. Episcopal San Lucas, Inc., 620 F. Supp. 2d 264, 269 (D.P.R. 2009). Moreover, "[t]he duty to stabilize under EMTALA 'does not impose a standard of care prescribing how physicians must treat a critical patient's condition while he remains in the hospital, but merely prescribes a precondition the hospital must satisfy before it may undertake to transfer the patient.'" Alvarez-Torres, 582 F.3d at 51 (citing Fraticelli-Torres v. Hosp. Hermanos, 300 Fed.Appx. 1, 4 (1st Cir.2008) (unpublished)).

As the Hospital accurately points out in its motion, nowhere on the complaint did the Plaintiff allege that she was suffering from - or even diagnosed - with an emergency medical condition before discharge from her three visits to PCH between December 15th and December 22nd of 2011. The allegation that she was diagnosed with a bacterial infection in her right hip over a month and a half after her visits to PCH is insufficient to establish that at the time of her discharges from PCH she was in fact suffering from an emergency medical condition. See Reynolds, 218 F.3d at 85 (affirming summary dismissal of plaintiffs' EMTALA stabilization claim for failure to satisfy a necessary predicate to the duty to stabilize by showing that an emergency medical condition was in existence at the time of patient's discharge); Kenyon v. Hosp. San Antonio, Inc., 951 F. Supp. 2d 255, 264 (D.P.R. 2013) ("[B]y its plain language, the statute does not provide a cause of action when a hospital does not stabilize an emergency medical condition that it negligently failed to diagnose.").

In fact, Plaintiff admits that the physicians at the Hospital failed to diagnose her condition. See Docket No. 3 at ¶ 3.34. Yet, "the plain language of the statute dictates a standard requiring actual knowledge of the emergency medical condition by the hospital staff." Colon-Ramos v. Clinica Santa Rosa, Inc., 938 F. Supp. 2d 222, 225 (D.P.R. 2013) (internal citations omitted).

Gonzalez's omission to allege a necessary predicate of her stabilization claim under EMTALA proves fatal, and thus, it is hereby **DISMISSED**.

CIV. NO. 13-1906 (PG)                                                    Page 9

**B. Supplemental Claims**

Finally, in its motions to dismiss, the Hospital requests that the state law claims be dismissed without prejudice insofar as the court should dismiss the federal claims. However, as discussed above, the Plaintiff has pleaded a plausible screening claim under EMTALA. Because Plaintiff's state-law claims arise out of the same nucleus of operative facts as her claim under federal law, it is in the interest of judicial efficiency that this court retain jurisdiction over the supplemental state law claims. See Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc., 734 F.3d 28, 35 (1st Cir.2013) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts."). The Hospital's request that the court dismiss Plaintiff's supplemental claims under Puerto Rico law is **DENIED**.

### IV. CONCLUSION

For the reasons stated above, this court hereby **GRANTS IN PART AND DENIES IN PART** the Hospital's motion to dismiss (Docket No. 66), and the Plaintiff's stabilization claims under EMTALA are hereby **DISMISSED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, November 17, 2015.

                                          S/ JUAN M. PEREZ-GIMENEZ
                                          JUAN M. PEREZ-GIMENEZ
                                          SENIOR U.S. DISTRICT JUDGE