# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**ZORAIDA GONZALEZ MORALES,**

Plaintiff,

v.

**ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, INC., et al.,**

Defendants.

CIV. NO. 13-1906 (PG)

## OPINION AND ORDER

Defendant Ashford Presbyterian Community Hospital, Inc., ("defendant" or "the hospital") moves for summary judgment. See Docket No. 163.[1] Plaintiff Zoraida Gonzalez-Morales ("plaintiff") opposes. See Docket No. 178. For the following reasons, defendant's motion is **DENIED**.

## I. BACKGROUND

On December 11, 2013, plaintiff filed suit against defendant for allegedly failing to screen and stabilize plaintiff during a series of emergency room visits that took place in December of 2011,[2] in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.[3] See Docket No. 1. Plaintiff later filed an amended complaint and defendant filed a third-party complaint against Global Emergency Services, Inc., and its insurance provider. See Docket No. 3 and 35. On November 17, 2015, this court dismissed plaintiff's EMTALA claims as they

---

[1] Defendant captions its Motion for Summary Judgment "Case No.: 12-1028 (FAB)." That case number refers to a different case before a different District Judge, where the hospital also appeared as defendant and was represented by the same law firm. The court does not take kindly to such carelessness and encourages defendant and its attorneys to correctly caption any and all filings before the undersigned.

[2] A detailed discussion of plaintiff's alleged emergency room visits can be found at Docket No. 71.

[3] Plaintiff also filed suit against Dr. Raul Vale-Flores, his wife and the conjugal partnership constituted between them; Dr. Lope M. Gómez-Homrazabal, his wife and the conjugal partnership constituted between them; Dr. Jose Dueño-Quiñones, his wife and the conjugal partnership constituted between them and Dr. Rosangel Santiago-Perez, his wife and the conjugal partnership constituted between them. The complaint includes a supplemental cause of action for medical malpractice pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141.

pertained to defendant's duty to stabilize. See Docket No. 71. Plaintiff's duty to screen claims survived. See id. Defendant now moves for summary judgment. See Docket No. 163.

## II. STANDARD OF REVIEW

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Undisputed facts can be proven or controverted only by "materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Parties must support assertions of undisputed material facts "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" Fed. R. Civ. P. 56 (c)(1)(A). See also Local Rule 56(b).

## III. DISCUSSION

Defendant moves for summary judgment by affirming primarily that the hospital followed its protocols when screening plaintiff in December 2011. See Docket No. 163-2 at 8-9. However, defendant supports its position with protocols that were not in force in December 2011: of the eight protocols included as evidentiary support for the motion, four went into effect after 2011, and another is undated.

Indeed, the General EMTALA Protocol submitted to the court ("Exhibit 1") went into effect in November 2013, and the Triage protocol ("Exhibit 2"), the General Patient Evaluation Protocol

("Exhibit 3"), and a Critical Result Notification Protocol ("Exhibit 7")[4] in September 2012 (all four protocols, collectively, "the late protocols"). See Docket No. 163, Exhibits 1, 2, 3 and 7. The Observation Protocol submitted to the court ("Exhibit 4") lacks a date of enforcement. See Docket No. 163, Exhibit 4. Defendant also submits a sworn statement ("the affidavit" or "Exhibit 9") wherein Dianette Reyes Cordero ("the declarant"), the former Nursing Associate Director of the hospital's Emergency Department and current Associate Director of the hospital's Computer Center, asserts that the late protocols are identical to their 2011 counterparts, which have been lost or destroyed.[5] See Docket No. 163, Exhibit 9. For the reasons stated below, these evidentiary submissions are insufficient to carry defendant's motion for summary judgment.

A. *Of Getting Blood from Stones: The Best Evidence Rule and Faulty Affidavits*

Per the widely-termed Best Evidence Rule, parties seeking to prove the content of a writing must introduce into evidence the original of that writing.[6] See Fed. R. Evid. 1002; Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 107 (1st Cir. 2011). The Federal Rules of Evidence provide four exceptions to that dictum. See Fed. R. Evid. 1004; Airframe Sys., Inc., 658 F.3d at 107. Only one of those exceptions is relevant here: secondary forms of evidence, such as witness testimony, may be admitted to prove the content of a writing *when the original has been lost or destroyed*. See Fed. R. Evid. 1004(1); Airframe Sys., Inc., 658 F.3d at 107; United States v. McMahon, 938 F.2d 1501, 1509 (1st Cir. 1991).

When the original has been lost or destroyed, proponents of secondary evidence must show that the loss or destruction did not operate by way of their own bad faith. See id. To boot, while "[the] Rule does not mention where the burden of proof lies on a claim of loss or destruction, … Courts have placed the burden on the proponent and have required a diligent search for the original

---

[4] Defendant also includes an earlier version of the Critical Result Notification Protocol, which predates December 2011. See Docket 163, Exhibit 6.

[5] Plaintiff asserts that defendant's "loss or destruction" of the missing 2011 protocols constitutes spoliation. See Docket No. 178 at 8-13. The court need not and will not address spoliation now.

[6] Duplicates of the original are generally admissible to the same extent as the original. See Fed. R. Evid. 1003.

unless it has clearly been destroyed." Vol. 5 Stephen a. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 1004.2 (9th ed. 2006). See also Harrington v. United States, 504 F.2d 1306, 1313 (1st Cir. 1974); Sylvania Elec. Prod., Inc. v. Flanagan, 352 F.2d 1005, 1008 (1st Cir. 1965); 2 McCormick On Evid. § 237 (7th ed. 2016).

Thus, in order to prove the content of a writing through secondary evidence, defendant must show (1) it carried out an unfruitful, diligent search for the original (so as to lead to the conclusion that the original is lost) or that the original was in fact destroyed, and also that (2) such demonstrated loss or destruction was not the product of its own bad faith. Here, where defendant posits simply that the EMTALA protocols in force in 2011 "have been destroyed or cannot be located," Exhibit 9 at 3, it has fallen well short of meeting either requirement. Indeed, the cupboard is bare as to *anything* that would satisfy them and activate the Rule 1004(1) exception. As such, the Best Evidence Rule precludes consideration of the late protocols as proof of the contents of their missing 2011 counterparts.

To boot, and perhaps most importantly, the declarant has demonstrated neither her competence nor her personal knowledge as to various critical assertions found in the affidavit – most notably, her statement that the missing protocols were lost or destroyed.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Conclusory assertions or arguments found in affidavits must be ignored – in the absence of "specific factual knowledge to support a statement," it "cannot serve as probative evidence." Reynolds v. Steward St. Elizabeth's Med. Ctr. of Bos., Inc., 364 F. Supp. 3d 37 (D. Mass. 2019).

Affirming that the declarant was the hospital's Nursing Associate Director in December 2011, is currently Associate Director of the Computer Center, and has reviewed the "emergency room guides and procedures that are *currently* in use by [defendant]," Exhibit 9 at 1 (emphasis ours), does nothing to prove personal knowledge and competence to testify about the contents of

the EMTALA protocols in place in December of 2011, nor to establish their subsequent loss or destruction. Such deficiencies deal a fatal blow to the affidavit and, in consequence, to defendant's entire motion for summary judgment.

In short, the court cannot consider the protocols that postdate December 2011. See Exhibits 1, 2, 3 and 7. The foundation for the court's conclusion is twofold. First, the court cannot take the late protocols as proof of the contents of the protocols in force in December 2011 because they are not originals or duplicates of the earlier writings, and defendant has failed to demonstrate loss or destruction and the absence of its own bad faith. Exhibits 1, 2, 3 and 7 are thus inadmissible.[7] Second, Exhibit 9 – the affidavit which gives context to the late protocols – cannot support defendant's motion for summary judgment because it runs afoul of Rule 56(c)(4). The late protocols are meaningless without the affidavit.

*B. Of Issues at Odds: Material Facts in Controversy*

The exclusion of the late protocols and the affidavit stops defendant's motion for summary judgment in its tracks because the present case hinges on whether the hospital's protocols were followed in 2011. Per EMTALA, covered hospitals must screen emergency room patients for emergency medical conditions "within the capability of the hospital's emergency department." 42 U.S.C. § 1395dd(a). Such screenings must be "reasonably calculated to identify critical medical conditions" and provided "uniformly to all those who present substantially similar symptoms." Correa v. Hosp. San Francisco, 69 F.3d 1188, 1192 (1st Cir. 1995). However, "when a hospital prescribes internal procedures for a screening examination, those internal procedures set the

---

[7] Undisputed facts can be proven or controverted only by "materials of evidentiary quality." Mulvihill, 335 F.3d at 19. On a motion for summary judgment, courts may only consider evidence that would be admissible or usable at trial. See Asociacion De Periodistas De Puerto Rico v. Mueller, 680 F.3d 70, 78 (1st Cir. 2012); Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993), certified question answered, 418 Mass. 615, 638 N.E.2d 33 (1994); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2721 (4th ed. 2018). Cf. Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 89 (1st Cir. 2018) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)) ("hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment").

parameters for an appropriate screening." Cruz-Queipo v. Hosp. Español Auxilio Mutuo de P.R., 417 F.3d 67, 70 (1st Cir. 2005) (quotations omitted). Thus, whether defendant followed the hospital's existing protocol is the "touchstone [for] gauging" whether plaintiff received an appropriate, uniform screening. Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 717 F.3d 64, 70 (1st Cir. 2013).

Due to the exclusion of the late protocols and the affidavit, Defendant's Statement of Uncontested Material Facts ("DSUMF") ¶¶ 2, 3, 4, 7, 9, 34, 35, 36, 38, 44, 66, 67, and 74 are either completely unsupported or partly unverifiable. See Fed. R. Civ. P. 56 (c)(1)(A) (parties must support assertions of undisputed material facts "by citing to particular parts of materials in the record...") As such, the aforementioned assertions of uncontested material facts remain in controversy because defendant cannot demonstrate they are devoid of genuine disputes. See Sands, 212 F.3d at 660. To boot, they all pertain to the core inquiry of plaintiff's EMTALA screening claim: whether defendant followed its own protocols when plaintiff visited its Emergency Room in December 2011. See Cruz-Vazquez, 717 F.3d at 70. As such, it is beyond contest that these facts are material.[8] See Calero-Cerezo, 355 F.3d at 19.

Because there are material facts in genuine controversy, summary judgment cannot be granted. See Fed. R. Civ. P. 56(a); Sands, 212 F.3d at 660. Defendant's motion is thus **DENIED.**

## IV. CONCLUSION

For the reasons above, defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, April 26, 2019.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNEZ**
**SENIOR U.S. DISTRICT JUDGE**

---

[8] These are not the only material facts in controversy in this case.